UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 3, 2018

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 18- |
| | |
| | Grand Jury Original |
| v. | |
| | VIOLATIONS: |
| | |
| BILAL AHMED, DDS | 18 U.S.C. § 371 (Conspiracy); |
| | 18 U.S.C. § 1347 (Health Care Fraud); |
| | 18 U.S.C. § 1343 (Wire Fraud). |
| and | |
| | |
| MAHSA AZIMIRAD, | FORFEITURE ALLEGATION: |
| | 18 U.S.C. § § 981(a)(1)(C) and 982(a)(7), |
| | 21 U.S.C. § 853(p), |
| | 28 U.S.C. § 2461(c) (Criminal Forfeiture). |
| | |
| Defendants. | |

**INDICTMENT**

The Grand Jury charges that:

**Introduction**

At all times material to this Indictment:

1.      Medicaid was a health insurance program established by Congress under Title XIX of the Social Security Act of 1965 that provides health insurance coverage to individuals who qualify under a "categorically needy" program or by meeting the conditions to be considered "medically needy." Categorically needy programs include Temporary Assistance for Needy Families (TANF), Supplemental Security Income (SSI), and refugee programs. Recipients of medical services, including dental services, are referred to as Medicaid "recipients" or

"beneficiaries." Medicaid is overseen and administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services ("HHS"). In the District of Columbia, the federal government provides the funding for more than 70% of Medicaid, with the District of Columbia providing the remaining funds. Medicaid in the District of Columbia ("D.C. Medicaid") was administered by the District of Columbia's Department of Health Care Finance ("DHCF"), located at 441 4th Street, N.W., Washington, D.C. 20001. Medicaid is a "health care benefit program" as defined in 18 U.S.C. § 24(b).

### The D.C. Medicaid Billing Process

2. To receive payments from D.C. Medicaid for providing covered dental services, dental providers must submit an enrollment application to obtain a Medicaid provider number. Dentists who are enrolled in D.C. Medicaid and purport to provide covered dental services to Medicaid recipients are known as "providers." When the provider enrolls in the Medicaid program, he/she is assigned a classification based on the information submitted on his/her enrollment form. The classification assigned to the provider will determine the services for which he/she can be reimbursed. In the provider application, dental providers indicate whether they are individual providers, group practice providers, clinic providers, a facility provider, or a waiver provider. Additionally, the dental provider agrees to abide by all federal and local laws, regulations, and program manuals applicable to dental providers. Providers accepted into the D.C. Medicaid program are given a unique provider identification number, known as a National Provider Identifier ("NPI"). Only providers assigned a NPI can submit claims for payment to Medicaid. A provider can use only their designated NPI to bill Medicaid for services. Medicaid operates as a vendor payment program, with payments made directly to the providers.

3. Once it obtains a NPI, a dental provider can submit or cause the submission of claims to D.C. Medicaid for payment for dental services the provider contends it has provided to D.C. Medicaid beneficiaries. To receive payments from D.C. Medicaid, dental providers operating in the District of Columbia are required to submit a claim, either electronically or in paper form. At all times relevant to this Indictment, DHCF contracted with Xerox to serve as its fiscal agent to receive and process claims submitted by D.C. Medicaid providers, including claims for dental services. Xerox had offices located at 750 First Street, N.E., Washington, D.C. 20002. However, claims for Medicaid were processed through the Medicaid Management Information System ("MMIS"), physically located in Pittsburgh, Pennsylvania. For each claim of reimbursement, Xerox assigned a unique Transaction Control Number ("TCN") that followed the specific claim from submission through payment. Xerox staff located in the District of Columbia prepared a weekly payment cycle report by accessing the information at MMIS in Pittsburgh, Pennsylvania and calculating the total amount of Medicaid claims approved for payment to Medicaid providers. Xerox sent the payment information to the District of Columbia Office of Finance and Treasury, located at 1101 4th Street, S.W., Washington, D.C. 20024. The D.C. Treasury paid the approved D.C. Medicaid claims via check sent through the U.S. mail or via electronic fund transfer, whichever method the provider requested. The Medicaid provider received the payment and a description of the payments in a schedule known as a Remittance Advice.

4. On each claim submitted by a dental provider to D.C. Medicaid, the provider had to identify certain information, such as the name of the Medicaid recipient, the date on which services were rendered, the number or letter identifying the tooth on which work was performed, the tooth surface (when applicable), the dental procedure code and the corresponding description,

3

the NPI for the treating dental provider, and the amount of money being claimed by the dental provider as payment from D.C. Medicaid.

5. D.C. Medicaid pays only for dental services that actually were provided as claimed.

6. The American Dental Association assigned and published numeric codes, known as Current Dental Terminology ("CDT"). The codes were a systematic listing of procedures and services performed by providers. Dental providers used the CDT codes to describe and evaluate the services for which they submitted Medicaid claims. D.C. Medicaid used the codes, in part, to decide whether to issue or deny payment. Each healthcare benefit program established a reimbursement fee for each procedure described by a CDT code. There were approximately 192 CDT codes, including code D2799 for provisional crowns, in effect in the period relevant to this Indictment. The procedures and services represented by the codes were healthcare benefits, items and services within the meaning of 18 U.S.C. § 24(b).

7. The average adult human mouth contains 32 teeth. When the integrity of a tooth is compromised, but extraction is not necessary, the tooth can be shaved down and capped with a permanent crown. While the permanent crown is fabricated, a temporary crown or a provisional crown may be installed on the shaved tooth. A temporary crown typically was used on a shaved tooth to protect it for about a week until the permanent crown was available. A provisional crown was used when additional treatment had to be performed prior to the patient receiving a permanent crown. A provisional crown could remain in the mouth for a longer duration than a temporary crown; and typically could be left on the shaved tooth for about six months. Provisional crowns would not be used for patients with a complete set of dentures because the patients had no teeth to which a crown could be attached.

### D.C. Medicaid Record Keeping Requirements

8. D.C. Medicaid dental providers were required to maintain the medical, financial, and administrative records concerning services provided to Medicaid beneficiaries for a minimum of ten (10) years (unless otherwise specified). These medical and fiscal records must fully disclose the nature and extent of the services rendered to beneficiaries. If DHCF terminates an agreement with a provider, the records relating to services rendered up to the effective date of the termination remain subject to the requirements stated in the D.C. Medicaid manual.

9. D.C. Medicaid regulations required that medical records be sufficiently complete to permit a review of the appropriateness of reimbursement made by D.C. Medicaid to a dental provider for services provided to a D.C. Medicaid beneficiary.

### Individuals and Entities

10. Defendant **BILAL AHMED** ("**AHMED**") was a resident of the state of Maryland. Defendant **AHMED** was a licensed dentist in the District of Columbia and, according to the company's Trade Registration Name Form, dated October 19, 2009, the sole proprietor of Universal Smiles dental practice ("Universal Smiles"). **AHMED** acquired the dental practice from another dentist in 2009, at which time the name of the practice was changed to Universal Smiles. Universal Smiles' offices were located at 2311 M Street, N.W., Suite 400, Washington, D.C. 20037. On June 27, 2013, **AHMED** changed Universal Smiles from a Professional Corporation to a Professional Limited Liability Company (PLLC). The articles of organization for Universal Smiles (PLLC) list **AHMED** as the registered agent for the corporation.

11. On or about February 26, 2014, DHCF issued a notice of suspension of D.C. Medicaid payments to Universal Smiles. On or about June 24, 2014, the D.C. Office of Administrative Hearings upheld the DHCF's decision to suspend D.C. Medicaid payments to

Universal Smiles. On or about November 19, 2014, the D.C. Dentistry Board executed a consent order that suspended **AHMED's** D.C. dentistry license for no less than one year.

12. On or about January 7, 2015, **AHMED** formed a limited liability company in Maryland, called Dental Equipment and Services, LLC ("DES"). The principal office for DES is listed as 4702 Randolph Road, Rockville, Maryland 20852, which was a property owned by **AHMED**. **AHMED** was listed as the registered agent for DES at the aforementioned address. DES engaged in the business of providing business support services required by dental practices, both in their start-up and established phases, in addition to providing office space, equipment, technology, human resources, furnishings, supplies, inventory, and marketing services. Some of the dentists who came to work for DES after **AHMED's** dental license was suspended, entered into business agreements with DES. These agreements list the "practice site" as 2311 M Street, N.W., Suite 400, Washington, D.C. 20037, which is Universal Smiles' office.

13. Defendant **MAHSA AZIMIRAD** ("**AZIMIRAD**") was a resident of the state of Maryland. In 2011, **AZIMIRAD** was hired as the office manager for Universal Smiles (and eventually performed the same function for DES). As the office manager, **AZIMIRAD** submitted and caused to be submitted, all claims for payment for D.C. Medicaid patients. She submitted those claims to D.C. Medicaid in paper form or electronically. Beginning in or about 2015, **AZIMIRAD** hired a third-party biller, C.H., who was physically located in North Carolina, to submit the claims for payment to D.C. Medicaid. **AZIMIRAD** provided the billing information by electronic mail or facsimile to C.H. so that the claims could be submitted to D.C. Medicaid through its web-based portal.

14. **AZIMIRAD** also owned and operated Emerald Consultants, LLC, a company that purported to provide marketing services to Universal Smiles and DES. **AZIMIRAD** registered

the company in 2013, and was listed as its registered agent. Emerald Consultants, LLC entered into a "Marketing Consulting Agreement" (hereafter the "Agreement") with "Bilal Ahmed DDS PC dba Universal Smiles DC" on May 20, 2011. Pursuant to this Agreement, Emerald Consultant, LLC provided Universal Smiles with marketing services, including "implementing plans and strategies that help client sell its products or services." The Agreement allowed Emerald Consultants, LLC to determine the "manner in which the [s]ervices are to be performed and the specific hours to be worked." The Agreement further provided that Emerald Consultants, LLC would receive a percentage of Universal Smiles' "individual monthly collections." **AZIMIRAD** arranged for commercials to appear on television channel DC 50 for Universal Smiles/DES.

### Background

#### Universal Smiles Medicaid Provider Agreement

15. On or about March 9, 2012, **AHMED**, doing business as Universal Smiles, submitted a provider application to the D.C. Department of Health, Medical Assistance Administration, to become a group D.C. Medicaid dental provider. The provider application dated March 7, 2012, indicated **AHMED** was the sole owner of the dental practice. **AHMED** became an approved group D.C. Medicaid dental provider effective on or about June 13, 2012. **AHMED's** group dental provider agreement required him, among other things, to maintain all records, including those related to services provided to covered Medicaid recipients, for a period of six (6) years or until all audits were complete, whichever was longer.

16. **AHMED**, through Universal Smiles and other companies controlled by him, hired several dentists to work at the dental practice. At various times during the period from August 2012 through February 2016, the dentists who provided services at the dental practice included Dr. DK, Dr. OA, Dr. AR, Dr. BLB, Dr. DH, Dr. PR, and Dr. ST. **AHMED** and **AZIMIRAD**

required dentists to be D.C. Medicaid providers to work for Universal Smiles or DES. **AZIMIRAD** assisted dentists, who were not D.C. Medicaid providers, with enrolling in the program.

<u>Universal Smiles and DES Medicaid Billing</u>

17. For each patient visit, dentists gave **AZIMIRAD** a Post-It Note or Routing Slip that reflected the dental services provided to a Medicaid beneficiary.

18. **AHMED** and **AZIMIRAD** submitted and caused to be submitted claims to D.C. Medicaid that they knew contained false or fraudulent statements and representations of material fact concerning the services allegedly provided to Medicaid beneficiaries by dentists at Universal Smiles and DES. The materially false or fraudulent statements and representations of material fact include, but are not limited to:

   a. The purported delivery of provisional crowns or permanent crowns to Medicaid beneficiaries who had a complete set of dentures and did not have teeth;

   b. The purported repeated delivery of provisional crowns to individual Medicaid beneficiaries, some of whom purportedly received hundreds of provisional crowns;

   c. The purported delivery of permanent and provisional crowns that are not supported by the dentists' notes in the Medicaid beneficiaries' files; and

   d. The purported provision of dental services to Medicaid beneficiaries that were not provided, but whose patient files or the dentists' billing records were annotated falsely to justify submitting claims to D.C. Medicaid.

19. Between on or about August 9, 2012, through on or about February 26, 2014, **AHMED** and **AZIMIRAD** caused Universal Smiles to submit claims to, and receive payments from, D.C. Medicaid for approximately $12,000,000.

20. Between on or about November 17, 2014, through on or about February 1, 2016, **AHMED** and **AZIMIRAD** caused DES to submit claims to, and receive payments from, D.C. Medicaid for approximately $1,000,000.

21. Of the more than $13 Million that D.C. Medicaid collectively paid Universal Smiles and DES, approximately $5.5 Million was for provisional crowns. For example, from on or about August 30, 2012, through on or about February 26, 2014, **AHMED** and **AZIMIRAD** caused D.C. Medicaid to pay Universal Smiles for 26,351 claims for provisional crowns using CDT code D2799. In contrast, for the same period, **AHMED** and **AZIMIRAD** caused D.C. Medicaid to pay Universal Smiles for 29,975 claims using all of the remaining 191 CDT codes.

22. **AHMED** and **AZIMIRAD** personally benefitted from the scheme to defraud D.C. Medicaid, with **AHMED** receiving more than $8 Million, and **AZIMIRAD** receiving more than $1 Million, in alleged compensation.

## COUNT ONE
### (Conspiracy)

### The Conspiracy

23. Paragraphs 1 through 22 of this Indictment are re-alleged and incorporated by reference, as if fully set forth herein.

24. From in or about March 2012, and continuing until in or about February 2016, the exact dates being unknown to the Grand Jury, in the District of Columbia and elsewhere, the defendants,

**BILAL AHMED**
**and**
**MAHSA AZIMIRAD**

did knowingly and willfully, that is with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

    a.    <u>Health Care Fraud</u> - by knowingly and willfully executing a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, D.C. Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of 18 U.S.C. § 1347; and

    b.    <u>Wire Fraud</u> – by engaging in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing and attempting to execute the scheme to defraud, willfully causing an interstate wire transmission, in violation of 18 U.S.C. § 1343.

### Goal of the Conspiracy to Defraud D.C. Medicaid

25.    It was the goal of the conspiracy for **AHMED** and **AZIMIRAD** to enrich themselves by submitting false and fraudulent claims to D.C. Medicaid seeking payment for the costs of dental services that were not provided.

### Manner and Means of the Conspiracy

26.    The manner and means by which **AHMED** and **AZIMIRAD** sought to accomplish the goals of the conspiracy and scheme to defraud included, among other things, the following:

a. **AHMED**, with defendant **AZIMIRAD's** assistance, applied to be a group Medicaid provider and to obtain a NPI number. Thereafter, **AHMED** and **AZIMIRAD** converted the Universal Smiles dental practice from a predominantly private insurance or private pay clientele into a predominantly Medicaid paid clientele to increase profits, and in turn increase their income through false and fraudulent billing of D.C. Medicaid for services not provided;

b. **AHMED** and **AZIMIRAD** required dentists employed by Universal Smiles or DES to be, or to become, Medicaid dental providers. Defendant **AZIMIRAD** assisted dentists with the Medicaid provider application process. Defendant **AZIMIRAD** directed some dentists to open post office boxes and bank accounts jointly with **AZIMIRAD**. Medicaid payments were delivered to the post office boxes and were collected, deposited and disbursed by, or at the direction of, **AZIMIRAD**;

c. **AHMED** placed **AZIMIRAD** solely in charge of Medicaid billing knowing that **AZIMIRAD** was billing for dental services that were not provided. **AZIMIRAD** had dominion and control over the Post-It Notes and Routing Slips submitted by the dentists reflecting dental services provided to Medicaid patients and that were supposed to be used to bill D.C. Medicaid;

d. **AZIMIRAD** submitted claims to D.C. Medicaid for services she knew had not been provided; and she provided C.H., a third-party billing vendor, with false information concerning purported dental services provided to cause C.H. to submit false claims to D.C. Medicaid;

e.  **AHMED** and **AZIMIRAD** made or caused to be made false entries in patients' dental records or in the billing information or claims submitted to D.C. Medicaid. For instance,

(1)  **AHMED** directed a dental assistant, G.E., to make false entries in patients' dental records concerning dental services that **AHMED** knew were not provided;

(2)  **AZIMIRAD** directed dentists to charge under a different CDT code for procedures that were not billable or altered the billing information without dentists' knowledge to increase the amount billed to Medicaid; and

(3)  **AZIMIRAD** submitted and caused to be submitted claims to D.C. Medicaid for services that were not reflected in or that were different from the dentists' entries in the Medicaid beneficiaries' files;

f.  **AHMED** and **AZIMIRAD** submitted and caused to be submitted, claims to D.C. Medicaid for the purported repeated placement of provisional crowns on the same teeth, sometimes resulting in D.C. Medicaid being billed for hundreds of provisional crowns for an individual beneficiary. For instance,

| Medicaid Beneficiary | Number of Provisional Crowns Billed to D.C. Medicaid |
|---|---|
| XXXX1644 | 138 |
| XXXX3837 | 487 |
| XXXX5777 | 107 |

g.  **AHMED** and **AZIMIRAD** used the CDT code D2799 to bill for provisional crowns that were not provided to increase the amount billed to D.C. Medicaid.

  h. **AHMED** and **AZIMIRAD** submitted and caused to be submitted, claims to D.C. Medicaid for dental services not provided knowing that they were false and fraudulent because Universal Smiles and DES staff and dentists complained to them that bills were being submitted for work that was not performed.

<u>**Overt Acts**</u>

27. In furtherance of the conspiracy and the scheme to defraud and to effect the object thereof, **AHMED** and **AZIMIRAD** committed the following overt acts, among others,

<u>False Claims for Provisional Crowns for Patients with a Complete Set of Dentures</u>

  a. Between on or about January 13, 2014, through on or about February 24, 2014, in the District of Columbia and elsewhere, **AHMED** and **AZIMIRAD** submitted and caused to be submitted claims to D.C. Medicaid in which they falsely claimed to have provided Medicaid Beneficiary XXXX5582 with 55 provisional crowns, knowing that the dental services had not been provided because the beneficiary had a complete set of dentures and no teeth.

  b. Between on or about July 11, 2013, through on or about February 3, 2014, in the District of Columbia and elsewhere, **AHMED** and **AZIMIRAD** submitted and caused to be submitted claims to D.C. Medicaid in which they falsely claimed to have provided Medicaid Beneficiary XXXX4124 with 51 provisional crowns, knowing that the dental services had not been provided because the beneficiary had a complete set of dentures and no teeth.

<u>False Claims for Alleged Repeated Delivery of Provisional Crowns</u>

  c. Between on or about April 3, 2013, through on or about February 19, 2014, in the District of Columbia and elsewhere, **AHMED** and **AZIMIRAD** submitted and

caused to be submitted claims to D.C. Medicaid in which they falsely claimed to have provided Medicaid Beneficiary XXXX0996 with 524 provisional crowns, knowing that the dental services had not been provided.

 d. Between on or about July 24, 2013, through on or about January 30, 2014, in the District of Columbia and elsewhere, **AHMED** and **AZIMIRAD** submitted and caused to be submitted claims to D.C. Medicaid in which they falsely claimed to have provided Medicaid Beneficiary XXXX5916 with 295 provisional crowns, knowing that the dental services had not been provided.

 e. Between on or about January 30, 2014, through on or about February 26, 2014, in the District of Columbia and elsewhere, **AHMED** and **AZIMIRAD** submitted and caused to be submitted claims to D.C. Medicaid in which they falsely claimed to have provided Medicaid Beneficiary XXXX7295 with 40 provisional crowns, knowing that the dental services had not been provided.

<u>False Claims for Dental Services Not Supported by Patients' Dental Records</u>

 f. **AHMED** and **AZIMIRAD** submitted and caused to be submitted a claim to D.C. Medicaid in which they falsely claimed that on or about February 4, 2014, in the District of Columbia and elsewhere, dental services were provided to Medicaid Beneficiary XXXX0890, that is the placement of 13 provisional crowns, knowing that the dental services had not been performed because the patient's file reflects that the appointment was rescheduled.

 g. **AHMED** and **AZIMIRAD** submitted and caused to be submitted a claim to D.C. Medicaid in which they falsely claimed that on or about April 7, 2015, in the District of Columbia and elsewhere, dental services were provided to Medicaid Beneficiary

XXXX0373, that is the placement of 15 provisional crowns, knowing that the dental services had not been performed because the patient's file reflects that the patient received three provisional crowns.

h. **AHMED** and **AZIMIRAD** submitted and caused to be submitted a claim to D.C. Medicaid in which they falsely claimed that on or about May 7, 2015, in the District of Columbia and elsewhere, dental services were provided to Medicaid Beneficiary XXXX3370, that is placement of 14 provisional crowns, knowing that the dental services had not been performed because the patient's file reflects that the patient received dental services on one tooth only.

i. **AHMED** and **AZIMIRAD** submitted and caused to be submitted a claim to D.C. Medicaid in which they falsely claimed that on or about May 7, 2015, in the District of Columbia and elsewhere, dental services were provided to Medicaid Beneficiary XXXX2012, that is the placement of 6 provisional crowns, knowing that the dental services had not been performed because the patient's file reflects that no new provisional crowns were provided.

<u>Falsifying Patient Records and Billing Information</u>

j. **AHMED** and **AZIMIRAD** submitted and caused to be submitted, a claim to D.C. Medicaid in which they falsely claimed that on or about February 12, 2014, in the District of Columbia and elsewhere, dental services were provided to Medicaid Beneficiary XXXX7295 on three teeth, knowing that the dental services had not been performed because Dr. DK reported to them that he only worked on one tooth and that the entry in his patient's file reflecting work on the other two teeth was false and not his.

k.  **AHMED** and **AZIMIRAD** submitted and caused to be submitted, a claim to D.C. Medicaid in which they falsely claimed that on or about November 4, 2015, in the District of Columbia and elsewhere, dental services were provided to Medicaid Beneficiary XXXX2012, that is a limited oral examination and re-cementation of a crown, knowing that the dental services had not been performed because Dr. ST reported only providing the patient with a whitening tray, a non-billable procedure, and the entries on the patient's routing slip concerning the other procedures were not hers.

**(Conspiracy, in violation of Title 18, United States Code, Section 371).**

## COUNT TWO
### (Health Care Fraud)

28.  From at least in or about March 2012, through in or about February 2016, in the District of Columbia and elsewhere, the defendants,

**BILAL AHMED
and
MAHSA AZIMIRAD**

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, namely D.C. Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of a health care benefit program, namely D.C. Medicaid, in connection with the delivery of and payment for health care benefits, items, and services.

29.  Paragraphs 1 through 22, 26 and 27 of this Indictment are re-alleged and contain the description of the above-mentioned conspiracy and scheme to artifice to defraud.

30. For purposes of executing the scheme to defraud, **AHMED** and **AZIMIRAD** submitted and caused to be submitted to D.C. Medicaid, false and fraudulent claims for dental services that were not provided as set forth in Paragraph 27 of this Indictment.

**(Health Care Fraud – Fraudulent Billings, in violation of Title 18, United States Code, Section 1347, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Section 2).**

## COUNTS THREE THROUGH SEVEN
(Wire Fraud)

31. From in or about March 2012, through in or about February 2016, in the District of Columbia and elsewhere, defendants,

**BILAL AHMED
and
MAHSA AZIMIRAD**

devised and intended to devise a scheme and artifice to defraud D.C. Medicaid, and to obtain money and property from D.C. Medicaid by means of materially false and fraudulent pretenses, representations, and promises, for services not provided, as more fully described below.

32. Paragraphs 1 through 22, 26 and 27 of this Indictment are hereby re-alleged and contain the description of the above-mentioned scheme and artifice to defraud.

33. On or about the dates listed below, in the District of Columbia and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud, **AHMED** and **AZIMIRAD** did willfully cause to be transmitted by means of wire communication in interstate commerce, certain writings, signals, and sounds, that is, the electronic transfer of claims and billing information for payment from the District of Columbia to the states set forth below:

| Count | Date of Service (on or about) | Claims Transmission Date (on or about) | Medicaid Beneficiary | CDT Code(s) Billed | Approximate Amount Billed | Recipient Entity and State |
|---|---|---|---|---|---|---|
| 3 | 2/12/2014 | 2/12/2014 | XXXX7295 | D0460 D2394 D2750 D3110 D4249 D2799 | $7,876 | Xerox MMIS Pennsylvania |
| 4 | 11/4/2015 | 11/4/2015 | XXXX2012 | D0140 D2920 | $93 | Third Party Biller North Carolina |
| 5 | 4/7/2015 | 4/7/2015 | XXXX0373 | D2799 | $3,000 | Third Party Biller North Carolina |
| 6 | 5/7/2015 | 5/7/2015 | XXXX3370 | D2799 | $2,800 | Third Party Biller North Carolina |
| 7 | 5/7/2015 | 5/7/2015 | XXXX2012 | D2799 | $1,200 | Third Party Biller North Carolina |

(**Wire Fraud, in violation of Title 18, United States Code, § 1343**).

## FORFEITURE ALLEGATION

1.    Upon conviction of either of the offenses alleged in Counts One and/or Two of this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of these offenses, pursuant to Title 18, United States Code, Section 982(a)(7). The United States will also seek a forfeiture

money judgment against the defendants equal to the value of any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of these offenses, pursuant to Title 18, United States Code, Section 982(a)(7).

2. Upon conviction of either of the offenses alleged in Counts One and/or Three through Seven of this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendants, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7); Title 28, United Sates Code, Section 2461(c); and Title 21, United States Code, Section 853(p)).**

*Jessie K. Liu/MZ*
JESSIE K. LIU
United States Attorney
for the District of Columbia

A TRUE BILL:

_____
Foreperson

Dated: January _____, 2019