*Use this form if you are asking the court (not the BOP) for compassionate release from prison. Please make sure the form is typed or neatly written. Once you complete the form, mail it to the clerk of the United States District Court where you were sentenced.*

RECEIVED
Mail Room

OCT - 4 2024

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

**LEAVE TO FILE GRANTED**
Judge CKollar-Kotelly
Oct 8, 2024

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF _Columbia_

UNITED STATES OF AMERICA

v.

_BILAL AHMED_
Write your full name here.

Case No. _19-026-01 (CKK)_
(write the number of your criminal case)

MOTION FOR SENTENCE
REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)
(Compassionate Release)
(*Pro Se* Prisoner)

---

### NOTICE

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

Does this motion include a request that any documents attached to this motion be filed under seal? (Documents filed under seal are not available to the public.)

 ✓ Yes

☐ No

If you answered yes, please list the documents in section IV of this form.

Page 1 of 6

## I.    SENTENCE INFORMATION

Date of sentencing:     2-10-2020 / 12-15-2017

Term of imprisonment imposed:    Combined 16 ½ years

Approximate time served to date:    60%

Projected release date:    11-03-2031

Length of Term of Supervised Release:    36 months

Have you filed an appeal in your case?

    ☑ Yes

    ☐ No

Are you subject to an order of deportation or an ICE detainer?

    ☐ Yes

    ☑ No

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES[1]

18 U.S.C. § 3582(c)(1)(A) allows you to file this motion (1) after you have fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on your behalf, or (2) 30 days after the warden of your facility received your request that the warden make a motion on your behalf, whichever is earlier.

Please include copies of any written correspondence to and from the Bureau of Prisons related to your motion, including your written request to the Warden and records of any denial from the Bureau of Prisons.

---

[1] The requirements for this compassionate release motion being filed with the court differ from the requirements that you would use to submit a compassionate release request to the Bureau of Prisons. This form should only be used for a compassionate release motion made to the court. If you are submitting a compassionate release request to the Bureau of Prisons, please review and follow the Bureau of Prisons program statement.

Have you personally submitted your request for compassionate release to the Warden
of the institution where you are incarcerated?

    ☑ Yes, I submitted a request for compassionate release to the warden on

    _____.

    ☐ No, I did not submit a request for compassionate release to the warden.

If no, explain why not:

_____

_____

Was your request denied by the Warden?

    ☐ Yes, my request was denied by the warden on (date):_____.

    ☑ No. I did not receive a response yet.

## III.    GROUNDS FOR RELEASE

Please use the checkboxes below to state the grounds for your request for compassionate
release. Please select all grounds that apply to you. You may attach additional sheets if
necessary to further describe the reasons supporting your motion. You may also attach any
relevant exhibits. Exhibits may include medical records if your request is based on a medical
condition, or a statement from a family member or sponsor.

A. Are you 70 years old or older?

    ☐ Yes.

    ☑ No.

If you answered no, go to Section B below. You do not need to fill out Section A.

If you answered yes, you may be eligible for release under 18 U.S.C. § 3582(c)(1)(A)(ii) if you
meet two additional criteria. Please answer the following questions so the Court can determine
if you are eligible for release under this section of the statute.

Have you served 30 years or more of imprisonment pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which you are imprisoned?

☐ Yes.

☑ No.

Has the Director of the Bureau of Prisons determined that you are not a danger to the safety of any other person or the community?

☑ Yes.

☐ No.

B. Do you believe there are other extraordinary and compelling reasons for your release?

☑ Yes.

☐ No.

If you answered "Yes," please check all boxes that apply so the Court can determine whether you are eligible for release under 18 U.S.C. § 3582(c)(1)(A)(i).

☐ I have been diagnosed with a terminal illness.

☑ I have a serious physical or medical condition; a serious functional or cognitive impairment; or deteriorating physical or mental health because of the aging process that substantially diminishes my ability to provide self-care within the environment of a correctional facility, and I am not expected to recover from this condition.

☐ I am 65 years old or older and I am experiencing a serious deterioration in physical or mental health because of the aging process.

☐ The caregiver of my minor child or children has died or become incapacitated and I am the only available caregiver for my child or children.

☐ My spouse or registered partner has become incapacitated and I am the only available caregiver for my spouse or registered partner.

☑ There are other extraordinary and compelling reasons for my release.

Please explain below the basis for your request. If there is additional information regarding any of these issues that you would like the Court to consider but which is confidential, you may include that information on a separate page, attach the page to this motion, and, in section IV below, request that that attachment be sealed.

Medical condition (Please see memorandum)

## IV.   ATTACHMENTS AND REQUEST TO SEAL

Please list any documents you are attaching to this motion. A proposed release plan is included as an attachment. You are encouraged but not required to complete the proposed release plan. A cover page for the submission of medical records and additional medical information is also included as an attachment to this motion. Again, you are not required to provide medical records and additional medical information. For each document you are attaching to this motion, state whether you request that it be filed under seal because it includes confidential information.

| Document | Attached? | | Request to seal? | |
|---|---|---|---|---|
| Proposed Release Plan | ☑ Yes | ☐ No | ☑ Yes | ☐ No |
| Additional medical information | ☑ Yes | ☐ No | ☑ Yes | ☐ No |
| | ☐ Yes | | ☐ Yes | ☐ No |
| | ☐ Yes | | ☐ Yes | ☐ No |

V.    REQUEST FOR APPOINTMENT OF COUNSEL

I do not have an attorney and I request an attorney be appointed to help me.

☑ Yes

☐ No

VI.    MOVANT'S DECLARATION AND SIGNATURE

For the reasons stated in this motion, I move the court for a reduction in sentence (compassionate release) under 18 U.S.C. § 3582(c)(1)(A). I declare under penalty of perjury that the facts stated in this motion are true and correct.

_9/27/24_
Date

_Bill Ch_
Signature

_BILAL AHMAD_
Name

_88400 - 053_
Bureau of Prisons Register #

_FCI LORETTO_
Bureau of Prisons Facility

_P.O. Box 1000 , CRESSON, PA  16630_
Institution's Address

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

# UNITED STATES DISTRICT COURT
## FOR THE
_____ DISTRICT OF _Columbia_

UNITED STATES OF AMERICA

v.

Case No. 19-026-01
(write the number of your criminal case)

_BILAL AHMED_
Write your full name here.

## PROPOSED RELEASE PLAN
### In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

---

**NOTICE**

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

If you provide information in this document that you believe should not be publicly available, you may request permission from the court to file the document under seal. If the request is granted, the document will be placed in the electronic court files but will not be available to the public.

Do you request that this document be filed under seal?

☑ Yes

☐ No

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

## PROPOSED RELEASE PLAN

To the extent the following information is available to you, please include the information requested below. This information will assist the U.S. Probation and Pretrial Services Office to prepare for your release if your motion is granted.

### A. Housing and Employment

Provide the full address where you intend to reside if you are released from prison:

20518 CAMPBELL CT., HAGERSTOWN, MD 21740

Provide the name and phone number of the property owner or renter of the address where you will reside if you are released from prison:

ABDUL WAHEED    301-991-6723

Provide the names (if under the age of 18, please use their initials only), ages, and relationship to you of any other residents living at the above listed address:

TASNEEM WAHEED — 65 YRS — AUNT

If you have employment secured, provide the name and address of your employer and describe your job duties:

FAHIM HAIDER JAFARI — fahimhaider@gmail.com
(WORK FROM HOME)    443-254-4859

List any additional housing or employment resources available to you:

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

## SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

| 9/27/24 | R.U. |
| --- | --- |
| Date | Signature |

BILAL AHMED
Name

88400-053
Bureau of Prisons Register #

FCI LORETTO
Bureau of Prisons Facility

P.O. BOX 1000  CRESSON, PA. 16630
Institution's Address

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

# UNITED STATES DISTRICT COURT
## FOR THE
### _____ DISTRICT OF _Columbia_

UNITED STATES OF AMERICA

v.

Case No. 19-026-01

(write the number of your criminal case)

_BILAL AHMED_

Write your full name here.

## MEDICAL RECORDS AND ADDITIONAL MEDICAL INFORMATION
### In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

---

### NOTICE

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

If you attach documents to this form that you believe should not be publicly available, you may request permission from the court to file those documents under seal. If the request is granted, the documents will be placed in the electronic court files but will not be available to the public.

Do you request that the attachments to this document be filed under seal?

☑ Yes

☐ No

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

B.  Medical needs

Will you require ongoing medical care if you are released from prison?

☑ Yes

☐ No

Will you have access to health insurance if released?

☑ Yes

☐ No

If yes, provide the name of your insurance company and the last four digits of the policy number. If no, how do you plan to pay for your medical care?

MY UNCLE & DR. KALIM HAVE COMMITTED TO INSURE THAT I RECIEVE ADEQUATE MEDICAL CARE BUT SPECIFICS CAN BE PROVIDED AT THE TIME OF RELEASE

If no, are you willing to apply for government medical services (Medicaid/Medicare)?

☑ Yes

☐ No

Do you have copies of your medical records documenting the condition(s) for which you are seeking release?

☑ Yes

☐ No

If yes, please include them with your motion. If no, where are the records located?

SOME OF THE RECORDS (ADDITIONAL) ARE WITH DC DEPT. OF CORRECTIONS.

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

Are you currently prescribed medication in the facility where you are incarcerated?

☑ Yes

☐ No

If yes, list all prescribed medication, dosage, and frequency:

(SEE MEMORANDUM ATTACHED)

Do you require durable medical equipment (e.g., wheelchair, walker, oxygen, prosthetic limbs, hospital bed)?

☑ Yes

☐ No

If yes, list equipment:

WALKING CANE + C-PAP MACHINE + BACK BRACE + NECK BRACE + KNEE BRACE

Do you require assistance with self-care such as bathing, walking, toileting?

☐ Yes

☑ No

If yes, please list the required assistance and how it will be provided:

DEPENDING ON THE SEVERITY OF THE PAIN, THERE ARE TIMES I REQUIRE ASSISTANCE WITH WALKING (SEE MEMORANDUM)

Do you require assisted living?

☐ Yes

☑ No

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

If yes, please provide address of the anticipated home or facility and the source of funding to pay for it.

_____

_____

Are the people you are proposing to reside with aware of your medical needs?

    ☑ Yes

    ☐ No

Do you have other community support that can assist with your medical needs?

    ☑ Yes

    ☐ No

Provide their names, ages, and relationship to you. If the person is under the age of 18, please use their initials only:

UNCLE — ABDUL WAHEED — 75 YRS.

DR. KALIM AT PULMONARY CONSULTANTS IN HAGERSTOWN, MD

Will you have transportation to and from your medical appointments?

    ☑ Yes

    ☐ No

Describe method of transportation:

CAR DRIVEN BY MY UNCLE / AUNT

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

# MEDICAL RECORDS AND ADDITIONAL MEDICAL INFORMATION

To the extent you have medical records or additional medical information that support your motion for compassionate release, please attach those records or that information to this document.

## SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

Date 9/27/24

Signature

Name BILAL AHMED

Bureau of Prisons Register # 88400—053

Bureau of Prisons Facility FCI LORETTO

Institution's Address P.O. BOX 1000, CRESSON, PA 16630

IN THE UNITED STATES DISRTICT COURT

FOR THE  DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA

V.

Bilal Ahmed

Case No. 19-026-01

---

Motion for Compassionate Release 18 USC §3582

---

Ahmed Bilàl, pro se
88400-053
FCI Loretto
PO BOX 1000
Cresson, PA 16630

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      )       Case No. 19-026-01
         Respondent,      )
                          )
                          )     ───────────
      V.                      )
                          )
                          )
Bilal Ahmed                )       September 27, 2024
         Petitioner.      )       Judge: Colleen Kollar-Kotelly

---

## Motion for Compassionate Release

---

Comes now, **Bilal Ahmed**, pro se, pursuant to 18 USC 3582(c)(1)(a) requests this Honorable Court to grant compassionate release based upon four sets of circumstances, when viewed together, created an extraordinary and compelling reason that warrants a redcution in sentence to time served or significant reduction.

### Preliminary Statement

In ruling on this motion, the Court faces the following issue—all else being peripheral:

> Under the new commission provision §1b1.13.(b)(1) an inmate is granted relief for medical circumstances. Mr. Ahmed takes 18 pills each day. After suffering two major heart attacks while incarcerated, Angina attacks are a consistent source of anxiety while attempting to provide self-care within a penological environment. Given his post-conviction rehabilitation, Covid-lockdowns, and medical condition, does Mr. Bilal's totality of circumstances fulfill the extraordinary and compelling standard?

This issue swallows all the subissues relating to Mr. Ahmed's 3582 motion.

## ADMINISTRATIVE EXHAUSTION

To satisfy section 3582(c)(1)(A)'s exhaustion requirement, a defendant must request that the BOP file "an agency-sponsored motion for compassionate release" on his behalf, Johnson, 464 F. Supp. 3d at 36, and then either "exhaust all administrative rights to appeal" the BOP's failure to file such a motion, 18 USC § 3582(c)(1)(A), or wait 30 days from the date upon which the warden first receives the defedant's request, "whichever is earlier," id., before seeking relief from the Court.  The purpose of this statutory requirement is to give the BOP "breathing room to take a first look at compassionate release motions" and determine its position on a given request before the defendant turns to the court. See United States v. Morris, No. 12-cr-154, 2020 U.S. Dist. LEXIS 91040, 2020 WL 2735651, at *5 (D.D.C. May 24, 2020).

On June 6th of 2024, Mr. Ahmed submitted a request to the warden requesting him to file a compassionate release motion on his behalf (Exhibit A). The BOP and the warden failed to respond within the 30 days period. This motion follows.


## JURISDICTION

Federal law, and not the D.C. Code governs Mr. Ahmed's motion for compassionate release. Given the uniqueness of the District of Columbia, his DC sentences and his federal sentence were merged to one sentence to be served in federal custody. See United  States v. Lavance Greene, 516 F. Supp. 3d1 (federal disitrict court jurisdiction proper when inmate has both a D.C. Code charge and a federal charge combined sentence).

Currently, the BOP has Mr. Ahmed's projected release date as 11/03/31, and he is expected to remain in federal custody until released. Therefore, this Court has personal and subject-matter juridiction to determine Mr. Ahmed's term of incarceration.

## LEGAL STANDARD

Mr. Ahmed can establish that he meets standard for compassionate release if he fulfills two eligibilty criteria. Under the first eligibility of 3582(c)(1)(A), a defendant may be eligible  for compassionate release if "extraordinary and compelling reasons" justify reducing his term of imprisonment.  18 U.S.C. § 3582(c)(1)(A)(i). Congress does not specify what counts as an "extraordinary and compelling reason[,]" but it expressly delegated to the Sentencing Comission the authority to define the circumstances that, if present, would satisfy that standard, see 28 U.S.C. §994(t). Accordingly, the Sentencing Comission has identified an array of reasons and categories that qualify as "extraordinary and compelling" reasons for release, including in relevant part, medical issues .v. rehabilitation of the inmates. See U.S. Sentencing Guidelines Manual §1B1.13.

The second eligibility prong requires Mr. Ahmed to prove that he satisfies the 3553(a) factors. Which requires that Mr. Ahmed to prove that a sentence reduction would not interfere with the "purposes of punishment set forth" in 3553(a). This Court can find that Mr. Ahmed fulfills both criteria for a significant reduction based upon the following:

## SUMMARY OF THE ARGUMENT

Mr. Ahmed's serious medical condition spearheads his plea for compassionate release. In addition with the harsher-than-contemplated Covid-lockdowns and his post-conviction rehabilitation, Mr. Ahmed's plea for release fulfills the USSC §1B1.13.(b)(1) and (6)(d). His 3553(a) factors in relation to Mr. Ahmed does not warrant continued incarceration of Mr. Ahmed. Finally, Ahmed has a viable release plan that is designed to ensure continued rehabilitative progress.

<u>ARGUMENT</u>

EXTRAORDINARY AND COMPELLING

    **Mr. Ahmed's physical condition is a serious hinderence in providing self-care within the environment of a correctional facility.**

Under §1B1.13.(b)(1), relief is warranted when "the physical condition of the inmate is a serious hinderence in providing self-care within the environ- ment of a correctional facility. This Court can find that his medical cond- ition alone gives rise to fulfil: the criteria "suffering from a serious physical or medical condition". id.


<u>Critical Heart Condition</u> (Chronic Ischemic Heart Disease)

Mr. Ahmed has suffered two major heart attacks while incarcerated. Once, in September of 2017 which earned him a three-night stay at Howard University Hospital. This heart attack tore critical heart tissue within his heart caus- ing irreversable harm. The attack caused the Howard physician to prescribe "Clopidog i: and Isosorbide Mononitrate" and other meds (see BOP's Medical Records Exhibit). The second attack occured when an officer performed an unscheduled inmate-count. Not expecting to be awakened, he was asleep. The prison guard banged against Mr. Ahmed's celldoor so thunderously that he suffered his second heart attack.

Seeing Mr. Ahmed in an obvious critical state, the guard kept repeating, "Oh my God, I'm sorry; Oh my God, I'm sorry" while pressing his emergency response signal.

The prison's medical unit arrived and immediately administered "nitroglycrine" under Mr. Ahmed's tongue which seemed to temporarily stablized him. Upon evaluation at Howard Hospital, he was told that he'd suffered an Angina attack (See Ahmed's Affidavit); the second attack occuring only a year after the first (2018).

It is the constant phobia of an Angina attack that serves as the protagonist to his myriad of medical complications. He lives within a penological environment with the persistent fear that he is one loud bang while sleeping or one stern shock away from a heart attack.

The natural course of the penological environment proves hazordously likely that a stern jolt, an untimely bang, or a thunderously shock will occur. Mr. Ahmed's current heart vulnerabilities and heart irregularities should have warranted the BOP to arrange a heart specialist to supervise his care. Until this day, the BOP has not arranged for him to be evaluated by a heart specialist. It remains unclear why—given the series of critical medicines he takes daily for his heart management. (see BOP's Medical Records Exhibit/ Isosorbide 60 mg and Clopidogrel 75 mg).

The central point in weighing Mr. Ahmed's heart condition is to convey this is no temporary heart condition. It is a condition that requires long-term or specialized care. The heart is a critical organ of the body that requires very particular management. Therefore, Mr. Bilal's heart condition alone qualifies as "[a] serious physical or medical condition" under the new USSC §1B1.13.(b)(1)(i), (ii), and (C).

The government and this circut has ackowledged that conditions requiring long-term, specialized care warrant release. See United States v. Glover, 2023 U.S. Dist. LEXIS 205735(long-term and specialized care when defendant had longstanding health issues and prostate cancer).

Even if the government would take the position that his heart condition, although serious, his condition is managable. This argument fails for one important reason: 'extraordinary and compelling' within the context of the U.S.S.G. does not mean "intensive care". See United States v. Greene, 516 F. Supp. 3d 1(Sentencing Commission does not suggest that a demonstration that a... defendant neeessitates intensive treatment)(emphasis added)

Mr. Ahmed's hypertension, obesity, and long-haul covid has also contributed to his ability to "provide self-care within the environment of a correctional facility". More importantly, this circuit has consistently provided relief for inmates with serious heart-related complications requiring specialized care. See United States v. Johnson, 464 F. Supp. 3d 22 (D.D.C. May 16, 2020) (relief granted when inmate was taking "multiple prescribed medications for his heart condition, which is indicative of the degree of his medical needs...Court finds that this serious and permanent medical condition is sufficent to "diminish[]" Johnson's ability "to provide self-care within the environment of a correctional facility" for purposes of the Sentencing Commission's policy statment, U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)")

## OBESITY

Mr. Ahmed understandable reluctance to place strain on his already weakened heart and malignant thyroid, undoubtedly, contributes to his obesity. He weighs approximately 240 Ibs while 5',11', yielding a BMI of 33.21. (see BOP's Medical Records Exhibit).

## ASTHMA

Coupled with his pulmonary heart-related conditions, Mr. Ahmed has moderate to severe asthma. He utilizes his inhaler 3-4 per day. The CDC defines people with moderate to severe asthma as "(i) symptoms occur[ing] daily and inhaled short-acting asthma medication is used everyday; (ii) symptoms interfere with daily activities; (iii) nighttime symptoms occur more than 1 time a week, but do not happen everyday; or (iv) lung function tests are abnormal (more than 60% to less than 80% of the expected value), and PEF [peak expiratory flow] varies more than 30% from morning to afternoon." See Classification of Asthma, Univ. of Michigan Medicine, uofmhealth.org/health-library/hw161158.

Mr. Ahmed's asthma is progressive and will more likely than not grow more progressive as he ages. Even eventually developing into 'chronic obstructive pulmonary disorder' (COPD).

## IMMUNOCOMPROMISED

Of the 18 daily pills each day that Mr. Ahmed takes, there is a prescribed medicine that assists in combating his chronic arthritis: Prednisone 5 mg. Longterm use of Prednisone leads to weakening of one immune system. Till this date the BOP has not run specilized test that would decisively show that Mr. Ahmed is in fact immunocompromised, however, given the large amount of medicines taken daily, it is only reasonable that specialized medical evaluations be performed in order to avoid the likely occurance of immuno-compromisation.

## MALIGNANT THYROID GLAND

The thyroid gland of Mr. Ahmed, according to the BOP's own medical examin- ations, is malignant (cancerous); furthering the position that his medical condition is both speacialized and longterm. Cancer, by its definition, dimimishes life expectency. The cancerous gland is a significant contributor to his obesity and diagnosed diabetes (type 2 millitus). See BOP's Medical Records Exhibit). Despite the thyroid surgery performed, he still experiences weight management complications with irregularities surrounding his thyroid.

## CHRONIC GOUT AND ARTHRITIS

The mobility of Mr. Ahmed is severely restricted due to the gout in his legs and severe back pain in his arthritic back. The BOP has supplied him with a walking-cane but it only assists in slightly mitigating his pain. Given the BOP's structure of prisons, in particular Loretto, Mr. Ahmed must walk to obtain critical needs to everyday living. In example, medical care

is in a seperate section of the prison, requiring him to walk a significant distance for medical services. Additionally, the cafeteria that he is required to walk to is even further than the medical building; merely walking six times each day, back and forth from the cafeteria, is a difficult task.

And this condition is not unique to Loretto, the penological environment typically spreads out its prison services (and rightfully so) for prisoners to get more space and other well-intended reasons. Unfortunately for inmates with specialized and longterm health complications, as Ahmed, this policy proves counterintuitive.

2. **The 18 Pills Each Day Demonstrate a Specialized and Serious Longterm Medical Condition.**

U.S.S.G. § 1B1.13(b)(1) States in relavent part:

(B) The defendant is -

(i) Suffering from a serious physical or medical condition;

(ii) Suffering from a serious functional or cognitive empairment;

or

(iii) Experiencing deteriorating physical or mental health because of the aging process.

that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility and from which he or she is not expected to recover.

<u>Discription and Intended Treatment:</u>

A careful review of Mr. Ahmed's BOP medical records reveal:

(a) Asthma;

(b) Chronic ischemic heart disease (less oxygen to the heart from;

9

the two heart attacks);

(c) Essential (primary) hypertension;

(d) Hyperlipidemia (very high cholesterol);

(e) Hypothyroidism (low function of thyroid do to most of it being taken out from surgery);

(f) Low back pain (severe disc problem at C3-C4 and L1-L2);

(g) Major depressive disorder (phycological depression from son's death and heart attack phobia);

(h) Malignant neoplasm of thyroid gland (cancer);

(i) Migraine (extreme type requiring injections);

(j) Pain in unspecified joint (gout and arthritis);

(k) Sleep apnea (also uses cpap machine);

(l) Type 2 diabetes mellitus;

(m) Unspecified mood disorder (cognitive);

(n) Vitamin D deficiency (see BOP's Medical Records Exhibit).

His medicines are -

[1] Metformin (diabetes) [2] Contact opti-free replenish solution 300 (eyes) [3] Ketoconazole shampoo 2% 120 ML (skin) [4] Ipratropium HFA 12.9 GM MDI (inhaler) [5] Topiramate 50 MG tab (migraines/preventitive) [6] Sumatriptan 6 MG/0.5 ML inj (migraines/injections) [7] Rosavastatin calcium 40 MG (cholesterol) [8] Sertraline HCI 50 MG tab (psyc-meds) [9] Montelukast sodium 10 MG tablet (asthma) [10] Isosorbide mononitrate ER 60 MG (heart treatment/prevention) [11] Mometasone furoate inhal 220 MCG/Inh (inhaler/steroid) [12] Metoprolol tartrate 50 MG tab (hyperten-sion) [13] Levothyroxine sodium 175 MCG (thyroid malignancy) [14] Cholecalciferol (vit. D) [15] Clopidogrel bisulfate 75 MG tab (heart infraction) [16] Calcium Carbonate 500 MG tab (calcium deficiency) [17] Albuterol inhaler (8.5 GM) [18] Aspirin 81 MG EC tab (blood thinner).

These unique combination of medicines for one person, daily, unquestion-
ably gives rise to a "defendant suffering from a serious physical or
medical condition" as intended by the Sentencing Commission.

**The COVID-19 Lockdowns Created a Harsher-Than-Contemplated penological**
**Circumstance That Significantly Contributes to Mr. Ahmed's Extraord-**
**inary and Compelling Plea for Compassionate Relief.**

The COVID-19 lockdowns presented a very distingushed harsher-than-
contemplated condition of confinement for Mr. Ahmed. Although the COVID
lockdowns adversely impacted every inmate during the once-in-a-century
pandemic, Mr. Ahmed's already tramatic medical condition reached an
extreme level warranting a significant weight in the decision to grant
extraordinary relief.

As an initial matter, Courts do not solely grant compassionate
release to every prisoner just because he endured the COVID lockdowns.
While insufficient on its own, this second plank within Mr. Ahmed's motion
for compassionate release weighs in favor of a finding of extraordinary
and compelling reasons. See United States V. Rodriguez, 492 F. Supp. 3d
306) (finding extraordinary and compelling reasons when "onerous
lockdowns and restrictions that have made the incarceration of prisoners
far harsher than normal". Concluding that "the actual severity of [impo-
sed] sentence as a result of the COVID-19 outbreak exceeds what the
Court anticipated at the time of sentencing").

Mr. Ahmed does not alledge the Court owes him relief based upon
enduring the COVID-lockdowns alone. Considering that every other inmate

also endured the same. But the Court cannot ignore the Pandemic was indeed extraordinary and not contemplated at sentencing. We argue, Mr. Ahmed's experience with the Pandemic warrants a reduction given his unique battle with his unique penological condition during the Pandemic.

COVID lockdowns are an appropriate weighing within the U.S.S.G.'s "catchall" provision.

The COVID pandemic and the prison conditions endured by inmates has served as a significant factor in whether to reduce an inmate's sentence. Judges in this district have consistently held the COVID Pandemic to potentially warrant relief under the Commission's "catchall" provision. See, e.g., United States V. Fields, No. 19-CR-0048,2021 U.S. Dist. LEXIS 37524, 2021 WL 780738, at *2 (D.D.C. Mar. 1, 2021)(holding that "the COVID-19 Pandemic falls under such an 'other reason' that may present an 'extraordinary and compelling reason' for a sentencing reduction" within the meaning of the catchall provision); United States V. Robinson, No. 16-CR-153-2, 2021 U.S. Dist. LEXIS 35342, 2021 WL 736732, at *2 (D.D.C. Feb. 25, 2021); United States V. Douglas, No. 10-CR-171-4, 2021 U.S. Dist. LEXIS 10755, 2021 WL 214563, at *4 (D.D.C. Jan. 21, 2021); United States V. Brooks, No. 18-CR-29, 2020 U.S. Dist LEXIS 230323, 2020 WL 7186157, at *2 (D.D.C. Dec. 7, 2020)("In light of the COVID crisis,...Courts have invoked [the catchall provision], which acknowledges that reasons 'other than, or in combination with, the reasons described' in [commentary section(1)(A),(B), and (C) of the policy statement] may present extraordinary and compelling circumstance.").

12

It is well settled law, the conditions of confinement levied on defendants, during the Covid-19 were harsh and oppressive, these conditions were unknown to this Court at the time of impostion of Mr. Ahmed's sentence. Had this Court been aware of just how harsh his sentence was from the onset of the pandemic to July of 2022, this Court would likely have varied from its original sentence, as other courts have done. Mr. Ahmed asserts the following conditions contributed to his harsher-than-contemplated sentence: (1) onerous lockdowns, effecting Mr. Ahmed's mental and physical health; (2) restricted visitation, and for long periods no visitation; (3) lack of access to recreation and programs; and (4) rationed and limited access to medical and psychology staff.

<u>Onerous Lockdowns:</u>

First, Mr. Ahmed contends that the harsh and oppressive conditions during the National Covid Pandemic created a unique set of prison conditions that warrant unique relief. The effect it had on his physical and mental health, which this Court couldn't have anticipated.

When the pandemic first broke out in March of 2020, Mr. Ahmed was incarcerated at USP-Canan, where inmates were confined to their cells for between 23 and 24 hours a day, dependant on whether it was a shower day (which occurred every 3rd day). Mr. Ahmed arrived at FCI-Loretto in 2021, but things were not much better, as inmates were restricted to their quarters and forced to deal with overcrowded

13

cells, with anxious inmates worrying about their own mortality. The foregoing had an adverse effect on Mr. Ahmed's depression and anxiety. Longterm isolation has lasting effects on an individual's mental health and life expentency. For almost two years we were told the lockdowns were indefinent. This took an unconsciou nable toll on his mental health.

### Visitation:

For a long period of time (between March 2020 to July 2022), visitation was almost non-existent, due to the risk of community spread. This meant Mr. Ahmed could not visit with his wife and children or elderly mother (now deceased). This broke Mr. Ahmed, and caused great line of anxiety, by not knowing if his loved ones were well; or not being able to aleviate their concerns for his health and safety. To add to this already troubling situation, while at FCI-Canan, when inmates were released to the showers, they were told to make their calls at the same time, meaning Mr. Ahmed could not communicate regularly with loved ones. It is uncontroverted that good family ties reduces recidivism. Had the Court been aware Mr. Ahmed would not be able to visit with his loved ones for long periods of time, the Court may not have imported such an extended sentence.

### Recreation & Programs:

In an attempt to mitigate the spread of Covid-19 within the prison complex at USP-Canan and FCI-Loretto, FBOP Staff limited recreation. For long periods of time recreation was suspended all

together. This effect had an adverse impact on Mr. Ahmed's mental and physical health, e.g. anxiety, depression, weight gain and chronic back pain.

From 2020 to 2023, the FBOP limited programming, and since the end of the pandemic most, if not all, programs are backlogged.

### Medical & Psychological Services:

During the course of the pandemic, the FBOP rationed and prioritized medical services and severely curtailed psychology services, to the point of non-existence.

It's understandable, that the FBOP would prioritize medical care, but this had an adverse effect on inmates, Mr. Ahmed in particular. As documented, Mr. Ahmed has a myriad of serious medical conditions that require regular and specialized monitoring, during the pandemic this did not occur. Moreover his pleas for medical services went unheard, (e.g. Mr. Ahmed suffers from a bad back, laying on his bunk for long periods caused his back to become painful, but do to staff being stretched thin, his back was not treated). Additionally, during the pandemic, while confined to his cell at USP-Canan, he suffered an abcess in his mouth, but due to Dental services being completely shut-down, the severe abcess went untreated.

What is unforgivable, and this Court should not condone, was the lack of psychology services. Arguably, the time when psychology is required the most. As a result, Mr. Ahmed's depression and anxiety grew rampant wherein Mr. Ahmed contemplated suicide.

Although the "harsher-than-contemplated" factor is not a freestanding ground for relief, both federal and state courts have consistently provided 'weight' to the harsh Covid-lockdowns in factoring whether to grant a sentence reduction. See United States v. Greene, 516 F. Supp. 3d 1 (Compassionate release granted when inmate's physical condition during Covid presented an extraordinary and compelling reason. Also citing over-crowding and harsh conditions). Some courts have held, "a day spent in prison under extreme lockdown and a well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison." See United States v. McRae, 2021 U.S. Dist. LEXIS 99129.

The Coivd Pademic is over. However, the effects of the historic pandemic profoundly d minished Mr. Ahmed's physical and mental health. It is in the power and discretion of this Honorable Court to weigh the covid-lockdowns with significant weight in considering a reduction.

**Mr. Ahmed's Post-Conviction Rehabilitation Weighed in Favor of Sentence Reduction.**

Since Mr. Ahmed's arrest and his incaceration began, he has enjoyed a perfect, infraction-free discipinary record. There isn't a single disciplinary ticket to reconcile before this Court. The BOP's own records show he is a willing participant in many constructive prison programs. While at DC Jail, he assisted in procurring college-level classes for inmates in coordination with Georgetown University. Teaching others basic and advanced level educational courses has been a source of pride and inner-peace for Mr. Ahmed.

As this Court is well aware, Ahmed had the priviledge of a high-level education. When he was arrested, convicted, and suffered simultaneous

collateral losses related to his reputation, he reached inwardly to figure out where his life went off track. Instead of throwing away his education, he built upon it. Using his skills to help over a half-dozen inmates acquire their GED.

Despite his pre-incarceration education, he has consistently programmed while incarcerated (see BOP Progress Report attached). Among the programs participated are recidivism-reducing courses such as: Money-Management; Money Smart; Cognitive and Critical Thinking. He is wait-listed for many others. Unfortunately, there no sex offender courses offered at Loretto FCI wherein he could participate in, otherwise he is more than willing. He would participate not only for show as a token gesture to reveal on a data-form, but as a promise and commitment toward his own presonal redemption.

Ahmed acknowledges the serious nature of his offenses that le d to his incaceration. Very early in the adversarial proceedings, he expressed remorse and spent 5 entire days working alongside the FBI in showing the loopholes he used to commit his crimes. The significant assistance didn't manifest into a 5K1.1 but should have been at least requested by his attorney. It is unclear why this was never promulgated before the Honorable Court.

Against this backdrop, Mr. Ahmed does not take the position that his deminished dangerousness and post-conviction conduct alone warrants releif in and of itself. However, the USSG 1B1.13 clearly assigns significant weight:

> (d) Rehabilitation of the Defendant—
> Pursuant to 28 U.S.C § 994(t),
>
> Rehabilitaion of the defendant is not, by itself, an extra-ordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

The lack of a disciplinary record, post-conviction programming, and character letters from staff and inmates indicates to this court an important finding: Mr. Ahmed's level of diminished dangerousness.

**The Purposes of Punishment Set Forth in Section 3553(a) Regarding Mr. Ahmed Do Not Require Continued Incarceration**

The final question that this motion poses to this Honorable Court answers whether releasing Mr. Ahmed, at this time, or as the Court deems appropriate, warrants or comports with the purposes of punishment laid out in section 3553(a)

In relevant part—
18 U.S.C § 3553(a)

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

This Honorable Court can find that Mr. Ahmed's post-conviction conduct; timely acceptance of resposibility; his 5-day cooperation with FBI agents post-arrest; his prison-inmate-mentoring and the 7 years of imprisonment that Mr. Ahmed has already served adequately acheives the purposes of punishment set forth within section 3553(a); and additional incarceration is not necessary to promote those purposes.

## Nature-of circumstances

Beginning with the nature of the circumstances, there is no dispute that Mr. Ahmed committed a grave and serious crime (see Mr. Ahmed's accompanying letter to this Honorable Court). Indeed, the sexual and fraud charges are very serious offenses. But the severity of the offense is only one aspect of the nature of the circumstances analysis, and it does not, in and of itself, demonstrate that nearly the decade Mr. Ahmed has already served is not sufficient as a deterrent to others of the public.

## Time already served

The BOP began calculating Mr. Ahmed's time-served in a very unorthodox and unsimplistic way. Instead of tallying his enitre incarceration, it only begin tabulating his "percent of statutory term served" once his initial consecutive sentence completed; as is clearly shown on the attached BOP sentence computation form. Which states, "Date Computation Began" as "01-24-2019". Yet, Mr. Ahmed has maintianed his incaceration since his sentencing (12-15-2017). Therefore, his actual statutory time served should be well into the 60% range.

The record before this Honorable Court amply demonstrates that the rehabilitation, deterrence, and incapacition goals of the lengthy prison sentence in which the Court imposed has been satisfied.

## Pattern score

According to the BOP's website, Ahmed has a 90% statistical chance of not re-offending (see pattern exhibit). Which adequately demonstrates a direct link to underscore his diminished dangerousness. See Pepper v. United States, 562 U.S. 476, 504 (2011)(Post-conviction conduct may plainly be relevant to the history and characteristics of the defendant under 3553(a)). The findings reflected within Mr. Ahmed's pattern score clearly provide the Court a direct link in weighing whether he can follow the law upon release.

## Diminished dangerousness, and incapacity to repeat the same offense

On both crimes, Mr. Ahmed's ability to repeat them has been severly incapacitated. The fraud medical crime is incapacitated by Mr. Ahmed spending 5 entire days working alongside the FBI showing them exactly how the loopholes were exploited. Which shows a desire not to repeat the offense and remorse. Second, the sexual conduct with the victoms was a horrendous act which required him to seek a long road to redemtion in recovering from. The shame of the pain for the victoms, their families, and Mr. Ahmed's own family has been the springboard for his new path in life. But beyond the remorse, he has no capacity to repeat this particular crime. For he has been stripped entirely of his medical licenses and is unable to practice medicine.

## Diminished dangerousness and medical condition (including age)

Much has been mentioned surrounding the physical condition of Mr. Ahmed. His age of 50+ (52) places him in a category that makes him even more less likely to reoffend. Being a first-time-offender, advanced in age, of higher-education, all of which, contributes to his overall recidivism calculation. When evaluating the risk of releasing a defendant into the community, this Honorable Court should look beyond the inherent dangerousness associated with the offense, and should consider the threat which the defendant posed at sentencing, and also the extent to which that threat remains at the time he seeks compassionate release. See, e.g., Johnson, 464 F.Supp. 3d at 40-1. A close review of the record before this Honorable Court amptly demonstrates that incapacitation goals imported at sentencing has been satisfied.

## Diminished dangerousness and the people who know Mr. Ahmed

The trust that Mr. Ahmed has earned among prison staff and the inmate community is a testiment of his rehabilitation and his lack of dangerousness. (Loretto staff are strictly prohibited from providing inmates reference letters in compassionate release motions. Thus, there is only a cursory reference)

As this Honorable Court can glean from the record, inmates and family members have written letters in support of Mr. Ahmed's character.

Fellow Inmate: "Ahmed is one of the first      that spoke to me when I arrived at this facility. And since that moment he has done nothing but try to help me and make me a better person... Not only that but he has been teaching me how to be a man and prioritize and be responsible."

-Ethan Autry
02869-509

Fellow Inmate:   "During my stay here at FCI Loretto, Bilal has not only given me a ray of light when every where [was] dark, but also acted as a father figure in a time when my own father passed due to cancer... I was unsure of my own future. That's when he showed me the numerous opportunities and potential that I would give to the world."

-Jun Ho Choi
92753-083

The letters are consistent with Mr. Ahmed's prison record. This Court can find for its review an extensive amount of prison programs undertaken by Mr. Ahmed reaching well into the hundreds of hours to accompany the character letters from family, friends, and professionals in support of release.

## Conclusion

The record before this Court provides no reason to believe that Mr. Ahmed still poses the same grave risk to others— today— than he did 7 years ago while being sentenced. To the contrary, he has steadfastly undertaken to serve others in his prison community, sought very early after his arrest to aid the FBI in repairing the fraud-loophole, and has shown pursuasively that he can follow the letter of the law during his post-conviction period.

21

Therefore, this Honorable Court can find that Mr. Ahmed's deteriorating medical condition qualifies as an extraordinary and compelling condition under 3582(c)(1)(A) and his 3553(a) factors, as applied to him, do not warrant continued incarceration.

Based upon the abovementioned, Mr.Ahmed humbly asks this Honorable Court to GRANT his compassionate release fully in ordering his immediate release; or IN PART by providing a release of incaceration but serving the remainder of his original sentence on house monitor; or IN PART by reducing his sentence in length by whatever this Honorable Court determines is in his favor.

Bilal Ahmed
Pro se,
88400-053

## CERTIFICATE OF SERVICE

Under the penalty of perjury, I affirm that I placed the abovementioned in the prison mailbox on September 27, 2024

Bilal Ahmed
Pro se,
88400-053

22